### In re BENJAMIN.

(Circuit Court of Appeals, Second Circuit. March 24, 1905.)

BANKRUPTCY—OFFICIAL AUCTIONEER—APPOINTMENT.

Bankr. Act July 1, 1898, c. 541, § 2, subd. 7, 30 Stat. 546 [U. S. Comp. St. 1901, p. 3421], gives courts of bankruptcy powers to cause the estate of a bankrupt to be collected, reduced to money, and distributed. Subdivision 15 authorizes the making of orders necessary for the enforcement of the provisions of the act, and section 47, subd. 2, 30 Stat. 557 [U. S. Comp. St. 1901, p. 3438], declares that trustees, in collecting and reducing the money and property of bankrupts, shall act under the direction of the court. *Held*, that such sections authorize the appointment of an auctioneer by the court to sell property of a bankrupt's estate in advance of any particular occasion therefor.

Petition for Revision of Order of the District Court of the United States for the Southern District of New York, in Bankruptcy.

Albert Stickney, for petitioners.
Hamilton Odell, for respondent.

Before WALLACE, TOWNSEND, and COXE, Circuit Judges.

PER CURIAM. By rule of the United States District Court for the Southern District of New York it was provided that sales of property of bankrupt estates in New York City should be by public auction by an official auctioneer, unless otherwise specially ordered; and such auctioneer was required to give a bond for the faithful performance of his duties, and for the faithful and prompt accounting of all the moneys and property which might come into his possession; and thereafter one Shongood was by order of the court designated as the official auctioneer. Subsequently the trustee of the bankrupt, Benjamin, for the purpose of selling the personal property of the bankrupt at auction, employed one Bronner as auctioneer, and removed the property to Bronner's place of business. Thereupon some of the creditors of the bankrupt applied to the court to direct the trustee to sell through the agency of the official auctioneer of the court, and the court, after hearing the trustee and the auctioneer, Bronner, granted the application of the creditors, and restrained Bronner from proceeding with the sale.

The trustee and Bronner, by this petition of review, challenge as erroneous the order of the court. Their main contention is that the court had no power to appoint an official auctioneer, and that consequently its interference was unwarranted.

It is quite unnecessary to discuss the question whether the court has created an office without authority. The circumstance that it has denominated the auctioneer as official auctioneer is quite immaterial. If it had power, in advance of any particular occasion which might call for the selection of an auctioneer to sell a bankrupt's estate, to designate some particular auctioneer who should act for the trustee in that behalf, unless upon further consideration some other auctioneer should be designated, there is no just ground for criticism of the order.

Among the general powers conferred upon the District Courts in bankruptcy are those enumerated in section 2, as follows:

"(7) To cause the estate of the bankrupt to be collected, reduced to money and distributed." "(15) To make such orders * * * in addition to those specifically provided for as may be necessary for the enforcement of the provisions of this act." Act July 1, 1898, c. 541, 30 Stat. 546 [U. S. Comp. St. 1901, p. 3421].

As respects trustees, and their proceedings in selling the property of bankrupts, the act vests the bankruptcy courts with complete discretionary power of control. It distinctly provides—section 47 (2) (30 Stat. 557 [U. S. Comp. St. 1901, p. 3438])—that trustees, in collecting and reducing the money and property of bankrupts, shall do so "under the direction of the court." In the exercise of this power of direction, it is plain that the court may, if it sees fit, in a particular case, disapprove the selection of an auctioneer to sell the property which the trustee has made, and order him to select another designated by the court. If the court can do this after the trustee has made a selection, there seems to be no good reason why it may not, if it sees fit, do so before.

It is urged for the petitioners that the effect of the rule is to deprive the creditors of the judgment of the trustee in selecting the auctioneer by whom the sale of the bankrupt's estate is to be made. But this would be the effect of the order in a particular case, and equally so whether it were one made in advance, or made subsequently to the selection of the auctioneer by the trustee.

It is unnecessary for us to consider whether the rule which has been assailed is or is not an expedient or salutary one, but it should be said that it was made because grave irregularities were supposed to have occurred previously. Judge Holt states in his opinion granting the order now under review the reasons that led to the adoption of the rule. He says:

"For some time after the bankrupt act went into operation, trustees and receivers making sales selected the auctioneer. It is said that under that system there were, in certain cases, undue competition and intrigue to obtain the business, combinations to suppress bidding, and improper bargains with attorneys for the division of commissions. There are undoubtedly some objections to the appointment of a special person to perform such services; but, in view of the facts that under the present system the official auctioneer is under a large bond, that he takes goods in storage before sale without charge, that the rate of fees is less than the ordinary charges of auctioneers, and that, in the opinion of my predecessors, and, it is believed, of a large majority of the leading members of the bar engaged in bankruptcy practice, the selection of one responsible auctioneer is preferable to having the business open to general competition, I think that the present system should be maintained."

The order is affirmed.